IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**JOSEPH GRAYSON HOUSBY,**
     **Plaintiff,**

**v.**                         **Civil Action No. 5:14-cv-1567**


**CAROLYN W. COLVIN,**
**Acting Commission of Social Security,**
     **Defendant.**


## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), Brief in Support of Defendant's Decision (ECF No. 11) and Plaintiff's Reply to Defendant's Brief in Support of Defendant's Decision (ECF No. 12).


### Background

Joseph Grayson Housby, Claimant, protectively applied a Title XVI application for disability and supplemental security income (SSI) on July 16, 2010, alleging disability on June 25, 2010 (Tr. at 111-114). The claim was denied initially and upon reconsideration. Claimant filed a written request for hearing February 25, 2011 (Tr. at 53). In his request for a hearing before an Administrative Law Judge (ALJ), Claimant stated "The decision is contrary to the medical evidence and regulations. (*Id.*) Claimant appeared and testified at a video hearing from Beckley, West Virginia, on August 6, 2012, before the ALJ who presided from Roanoke, Virginia (Tr. at 75). In the Decision dated August 13, 2012, the ALJ determined that Claimant was not disabled under the Social Security Act (Tr. at 11-19). On October 2, 2012, Claimant

requested a review by the Appeals Council (Tr. at 5-6).  On November 18, 2013, the Appeals Council denied Claimant's request for review upon finding no reason under the rules to review the ALJ's decision (Tr. at 1-3).

On January 14, 2014, Claimant brought the present action requesting this Court to remand the unfavorable decision as it was not supported by substantial evidence.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2014).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2014).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date.  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic back pain, degenerative disc disease, seizures, possible alcohol withdrawal seizures, depression and alcohol abuse.  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  The ALJ then found that Claimant has a residual functional capacity (RFC) for light work, reduced by nonexertional limitations.[1]  The ALJ concluded that Claimant could perform past relevant work as a packer or cleaner.  On this basis, benefits were denied.

<u>Scope of Review</u>

---

[1] Claimant can frequently stoop and occasionally balance, kneel, crouch, crawl, and climb ramps and stairs but never climb ladders, ropes or scaffolds.  Additionally, the claimant should avoid concentrated exposure to extreme cold and vibrating surfaces, and should avoid even moderate exposure to hazards.  Finally, due to Claimant's mental impairments, he is limited to no more than simple job instructions (Tr. at 14).

3

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

### Claimant's Background

Claimant was forty-four years old at the time he filed his application for SSI benefits. Claimant completed one year of college in the pre-med curriculum and has a driver's license (Tr. at 28, 238).  He has worked for a contractor to build houses (Tr. at 29).  He testified that he "ran a crew of three."  (*Id.*)  Claimant asserts that he stopped working due to a back injury and seizures[2].  Claimant's seizures have been successfully treated by medication (Tr. at 32).  As a result, Claimant has not experienced a seizure for "a little over a year." (*Id.*)  Claimant lives with his mother but washes his own laundry and prepares his own meals. Claimant is an active

---

[2] Claimant testified that his seizures may be the result of alcohol withdrawal.

member of his community.  He belongs to a church, is a committee member for the community

July Fourth celebration and volunteers for both the local fire department and emergency medical

services.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the ALJ's residual functional capacity determination is not

supported by substantial evidence (ECF No. 10).  Claimant argues the following:

> The ALJ failed to provide adequate limitations as a result of [Claimant's] severe
> mental impairments, and more specifically, in relations to the finding of the ALJ
> himself that [Claimant] had moderate limitations in social functioning.  Thus, the
> ALJ failed to comply with SSR 96-8p in his crafting of [Claimant's] residual
> functional capacity finding.  This error resulted in an incomplete hypothetical
> being posed to the vocational expert at the second level of the two-tier analysis
> required at step five of the sequential evaluation process.  The ALJ relied on the
> vocational expert's testimony in determining [Claimant] was not disabled, and
> thereafter, this error is not harmless.  (*Id.*)

<u>The Medical Record</u>

The Court has reviewed all evidence of record, including the medical evidence, and will

discuss it briefly.

On June 24, 2010, Claimant visited the Emergency Room (ER) at Greenbrier Valley

Medical Center in Ronceverte, WV, complaining of a lumbar spasm following a day of hanging

drywall (Tr. at 197-198).  An x-ray of his lumbar spine demonstrated "mild to moderate scoliosis

in the lumbar area convex left" (Tr. at 195).  Colin A. Rose, MD, reviewed the x-ray and

reported that "There is mild reduction in the height of the L3-4 and L4-5 disk spaces consistent

with degenerative disk disease." (*Id.*) Claimant was discharged on June 25, 2010, with

prescriptions for Lortab and Valium (Tr. at 198).  Claimant was directed to follow up with his

primary care physician.

On July 1, 2010, Claimant was seen by his primary care physician, Marilyn K. Glaser, MD, at Alderson Family Medicine, with complaints of back pain after a fall at home to which he couldn't get up afterwards (Tr. at 203). Claimant requested an MRI of his back and prescriptions for Lortab and Valium. (*Id.*) An MRI of the lumbar spine was performed without contrast (Tr. at 204). Dr. Glaser's notes did not mention any mental impairments. Radslov Nicholas, MD, reviewed the MRI and found no evidence of fracture or bone bruising. (*Id.*) Dr. Nicholas reported that there is degenerative disk disease in L1-2, L3-4 and L4-5, as well as facet joint arthritis from L1 through S1. Dr. Nicholas found "At L4-5 level there is central and right paracentral herniated nucleous pulposus with flattening of the anterior margin of the dural sac and impingement of the existing spinal nerve on the right side." Dr. Nicholas referred Claimant to a neurosurgeon with Neurological Associates in Charleston, WV, for consultation.[3] (*Id.*) Neurological Associates was unable to schedule a consultation for Claimant because they were at their maximum for Medicaid referrals (Tr. at 225). On July 16, 2010, Claimant filed an application for  Supplemental Security Income (SSI) on July 29, 2010 (Tr. at 111-114).

On October 21, 2010, an Internal Medicine Examination was conducted by the West Virginia Disability Determination Service by Kip Beard, MD (Tr. at 208-212). Claimant complained of seizures, herniated disk and degenerative disk disease (Tr. at 208). Claimant reported to having at least one seizure a month. He reported his last two known seizures to have occurred on June 25, 2010, and July 8, 2010. Claimant reported "he is more likely to have a seizure if he has been drinking alcohol or is exhausted." (*Id.*) On examination, Dr. Beard noted that Claimant's gait was "a little stiff," but he did not limp or require an assistive device (Tr. at 210). Claimant reported moderate pain while forward bending, paravertebral tenderness and

---

[3] In the hand written notes on Claimant's radiology report, it is stated that Claimant does not have insurance (Tr. at 204).

mild left clinical scoliosis (Tr. at 211).   However, Claimant displayed normal strength and reflexes.   Dr. Beard formed the impression of (1) generalized seizures, possible alcohol withdrawal seizures, according to history, (2) probable alcohol dependence and (3) chronic thoracolumbar strain, with MRI evidence of facet arthrosis, multiple level degenerative disc disease with herniated nucleus pulposus and right-sided neural foraminal narrowing, without clinical radiculopathy (Tr. at 212). Claimant reported that he was not taking any medication because he did not have insurance at the time.

Medical Consultant, Marcel Lambrechts, MD, performed a Physical Residual Functional Capacity Assessment of Claimant on November 8, 2010 (Tr. at 215-222).  Dr. Lambrechts stated that Claimant's symptoms were partially credible (Tr. at 220).  Dr. Lambrechts stated "I am surprised that he has never had an EEG so far."  Dr. Lambrechts opined that Claimant probably hasn't had an EEG due to his lack of money from spending it on drinking alcohol.  Claimant was reported to have severe back problems.   Claimant reported continuous aching, cramping, throbbing pain in lower back that is made worse by sitting, standing, sleeping, bending, reaching and lifting.  Claimant reported nothing provides relief. Claimant reported that he is unable to lift more than 10 pounds, walk further than ½ mile before needing to stop and rest for 10 minutes; stand longer than 15 minutes, and sitting longer than 30 minutes.   Dr. Lambrechts provided that Claimant can't sleep more than 2 hours due to back pain.  He has no problem with personal care, washing laundry, standing, reaching, walking, driving, shopping, socializing, mowing the grass, and taking care of his medications.  (*Id.*).  On February 1, 2011, Narendra Parikshak, MD affirmed Dr. Lambrechts' Resicual Functional Capacity Assessment (Tr. at 226).

On March 22, 2012, Noel Jewell, MD, conducted a psychiatric evaluation for the Department of Health and Human Resources and Medicaid (Tr. at 243-248).  Claimant reported

to previously suffering with anxiety and depression.  Claimant stated that he took medications for his anxiety and depression for three years (Tr. at 243).  Claimant stated that "he eventually tapered off of them [the medications] and has felt good since."  He stated that he has some bad days occasionally, but for the most part, he is feeling hopeful that things will get better.  He stated that "he has had no depressive symptoms or anxiety symptoms.  He has never been manic."  (*Id.*)

Claimant reported that "One of the big problems that he has had throughout his life is that he has been unable to work because of his back problems and his seizure disorder."  Claimant reported to having seizures since he was a child.  He reported that he had not experienced a seizure or had any psychotic symptoms in over a year.  Dr. Jewell recommended Claimant schedule an appointment in the future, if needed. Dr. Jewell stated that "I do not see any indication for any medications or any acute hospitalizations"  (Tr. at 245).  Claimant's prognosis was good.

On July 31, 2012, Claimant's treating physician, Dr. Glaser, completed a Medical Assessment of Ability to do Work-Related Activities form on Claimant's behalf (Tr. at 425-427). Dr. Glaser reported that Claimant's ability to sit is affected by his impairment (Tr. at 425). She reported that Claimant can sit a total of 4 hours in an 8-hour workday (Tr. at 426).  She reported that Claimant can occasionally climb, balance, stoop, crouch, kneel and crawl.  Dr. Glaser reported that Claimant's mental health problems interfere with his ability to cope with stressful situations.  She reported "He is not comfortable in social situations where there is a lot of attention on him to speak or perform tasks with people watching him" (Tr. at 427).  Dr. Glaser opined that Claimant "is not able to be gainfully employed at a job outside his home.  He takes

medications to help manage his medical conditions.  I see no potential for improvement of his medical conditions.  He is permanently disabled."  (*Id.*)

Discussion

Claimant asserts that the ALJ's hypothetical presented to the vocational expert (VE) at the hearing must include limitations to account for all of Claimant's severe impairments. Claimant asserts "the ALJ's controlling hypothetical question omitted limitations to accommodate [Claimant's] moderate limitations in social functioning (i.e. the amount of contact with the public, co-workers, and/or supervisors), exactly as the ALJ's ultimate RFC omitted those limitations.  Thus, the VE testimony does not constitute substantial evidence to support the ALJ's decision" (ECF No. 12).

Defendant asserts that the ALJ correctly found that despite his severe impairments, Claimant retained the ability to perform a limited range of light exertional work.  In determining the RFC, the ALJ held that Claimant could perform work that exists in the economy, therefore, the ALJ's decision is substantially supported by the evidence (ECF No. 11).

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a.  First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment.  §§ 404.1520a(b)(1) and 416.920a(b)(1) (2014). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s).  §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2014).  Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§404.1520a(b)(2)

9

and 416.920a(b)(2) (2014).  Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation).  §§ 404.1520a(c)(3) and 416.920a(c)(3) (2014).  The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme.  The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4) (2014).  A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2014).  Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2014).  Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity.  §§ 404.1520a(d)(3) and 416.920a(d)(3) (2014).  The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described  in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2014).

At steps one, two and three of the sequential evaluation process, the ALJ held that "The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.09.  The ALJ did not find at least two "marked" limitations in activities of daily living, difficulties in maintaining social functioning, maintaining concentration, persistence or pace, or repeated episodes of

10

decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity.  "RFC represents the most that an individual can do despite his or her limitations or restrictions." *See* Social Security Ruling 96-8p.  Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job.  20 C.F.R. § 416.945(a) (2014).  "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." *Id.*  "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Claimant attacks the ALJ's RFC assessment as failing to comply with the requirements of Social Security Ruling (SSR) 96-8p. Claimant contends that the ALJ's RFC finding was erroneous in that it overlooked and failed to expand upon the findings made as part of the Psychiatric Review Technique.  Claimant argues:

> The ALJ failed to provide adequate limitations as a result of [Claimant's] severe mental impairments, and more specifically, in relations to the finding of the ALJ himself that [Claimant] had moderate limitations in social functioning.  Thus, the ALJ failed to comply with SSR 96-8p in his crafting of [Claimant's] residual functional capacity finding.  This error resulted in an incomplete hypothetical being posed to the vocational expert at the second level of the two-tier analysis required at step five of the sequential evaluation process.  The ALJ relied on the vocational expert's testimony in determining [Claimant] was not disabled, and therefore, this error is not harmless (ECF No. 10).

Defendant asserts that the ALJ found at steps one and two that Claimant had not worked since he applied for benefits and suffered from severe chronic back pain, degenerative disc disease, seizures, possible alcohol withdrawal seizures, depression and alcohol abuse (Tr. at 13). At step three, the ALJ determined that Claimant's impairments did not meet or equal the requirements of any listing (Tr. at 13-14). Next, the ALJ found that Claimant retained the residual functional capacity to perform light exertional work involving simple instructions and no more than frequent stooping; no more than occasional balancing, kneeling, crouching, crawling and climbing; allows him to avoid concentrated exposure to extreme cold and vibrating surfaces; and allows him to avoid even moderate exposure to hazards (Tr. at 14). With this residual functional capacity, the ALJ found that Claimant could not return to his past work at step four, but based on the VE's testimony, the Claimant could perform other work at the light exertional level as a a packer or a cleaner (Tr. at 18). Defendant asserts that the ALJ's findings are supported by substantial evidence and should be affirmed. (ECF No. 11). Additionally, Defendant asserts that the jobs identified by the VE, packer and cleaner, do not require significant interaction with other people or talking.

<u>Social Security Ruling 96-8p</u>

SSR 96-8p provides, in pertinent part:

The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

61 F.R. at 34475.

Claimant asserts the ALJ overlooked findings made as part of the Psychiatric Review Technique (ECF No. 10).  Upon review of the record, there is no Psychiatric Review Technique Form (PRTF) or Mental Residual Functional Capacity Assessment (MRFC) in the record, contrary to Claimant's assertion.  The use of ratings on a  PRTF are for the purpose of evaluating impairments at the second and third steps of the sequential analysis, not at the fifth step.  Social Security Ruling 96-8p explains the function of a PRTF:

> The psychiatric review technique described in 20 C.F.R. 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listings of Impairments, and summarized on the PRTF.  SSR 96-8p, 1996 WL 362207, at *34477 (July 2, 1996).

This Court has held that SSR 96-8p makes clear that evaluation of the "B" criteria at the third step of the sequential analysis need not explicitly be included at the fourth or fifth steps of the sequential analysis, including the inclusion of such limitations in a hypothetical question to a vocational expert.   Instead, the ALJ must actually make "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." *See Roland Sams v. Jo Anne Barnhart,* Civil Action No. 2:02-cv-0240 (S.D. W.Va. 2003).

Claimant's argument misinterpreted the ALJ's finding of moderate difficulties in Claimant's social functioning.  A Psychiatric Review Technique evaluation is not included in the

evidence of record.  However, the ALJ's decision discussed the degree of functional limitations imposed by Claimant's medically determinable impairments.  When rating a mental impairment listing, the degree the impairment interferes with the ability to function independently, appropriately, effectively and on a sustained basis in four broad areas of functioning must be rated.  The four broad areas of functioning known as the "B" criteria of listings are: activities of daily living;  social functioning;  concentration, persistence or pace;  and episodes of decompensation.  *See* Listing 12.04. *Affective Disorders.* To satisfy the paragraph "B" criteria, the mental impairments must result in at least two of the following:  marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.   If paragraph "B" criteria are not satisfied then the evidence is evaluated to determine if paragraph "C" criteria has been met.  Evidence does not establish the presence of paragraph "C" criteria when the evidence does not establish the presence of a chronic disorder or when the evidence establishes the presence of a chronic disorder without any severity.  For example, even if evidence establishes the presence of a chronic impairment,[4] the occasional need for help does not satisfy the severity requirements of either paragraph "C" criteria.

Whether the severity of Claimant's mental impairment meets or does not meet paragraph "B" and paragraph "C" criteria is determined at steps two and three of the sequential evaluation process for mental impairments.[5]  The limitations discussed to determine paragraph "B" criteria

---

[4] This Court has previously affirmed an ALJ's findings related to a claimant's daily activities stating that the claimant "often would have difficulty in concentration, persistence and pace" was "more in the nature of the limitation as opposed to an ability to do something." *Roland Sams v. Jo Anne Barnhart*, Civil Action No. 2:02-cv-0240 (S.D. W.Va. 2003).

[5] *Assessment of severity*.  We measure severity according to the functional limitations imposed by your medically determinable mental impairment(s).  We assess functional limitations using the four criteria in paragraph B of the listings:  Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Where we use "marked" as a standard for measuring the degree of

at sequential steps two and three are not part of a RFC assessment.  The mental RFC assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs "B" and "C".

The RFC determination is an issue reserved to the Commissioner.  See 20 C.F.R. § 416.927(e)(2) (2014).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

In the present case, the ALJ clearly stated that "due to the claimant's mental impairments" he is limited to no more than simple job instructions (Tr. at 14).  The ALJ derived this mental limitation from a detailed assessment of Claimant's moderate difficulties in social function.[6]

Social Functioning

The Listings for mental disorders states:

---

limitation, it means more than moderate but less than extreme.  A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.  See §§ 404.1520a and 416.920a.

[6] The Program Operations Manual System (POMS) indicates that a claimant's mental limitations are "moderately limited," in regard to a claimant's mental RFC, when evidence supports the conclusion that the individual's capacity to perform the activity is impaired.  Regulation No. 4, sections 404.1520a and Regulations No. 16, sections 416.920a.  The regulation elaborates to provide that "[t]he degree and extent of the capacity or limitation must be described in narrative format…"  POMS 24510.063(B)(2).

*Social functioning* refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. You may exhibit strength in social functioning by such things as your ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. We also need to consider cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.

We do not define "marked" by a specific number of different behaviors in which social functioning is impaired, but by the nature of overall degree of interference with function. For example, if you are highly antagonistic, uncooperative, or hostile but are tolerated by local storekeepers, we may nevertheless find that you have a marked limitation in social functioning because that behavior is not acceptable in other social contexts. Listings 12.00(C)(2).

Claimant's testimony at the hearing as well as the evidence of record demonstrates that Claimant socializes with family and friends, as well as performs the duties of a firefighter. Claimant does not have problems interacting with other individuals.

Treating Physician

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 416.927(d)(2) (2014). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. § 416.927(d)(2) (2014). The

opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 416.927(d)(2) (2014). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1994). If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* § 416.927(d)(2).

The ALJ's decision determined weight afforded to the physician's opinions as follows:

In this case, the State agency consultants evaluated the objective medical record and the claimant's allegations and determined that he is capable of performing a range of light exertional work with occasional postural limitations (Exhibits 5F and 7F). The undersigned considered the updated medical records received since the State agency consultants rendered their assessments as to the claimant's residual functional capacity, but there is no new evidence showing the claimant is unable to perform sedentary work. However, the undersigned finds that the evidence submitted at the hearing level shows the claimant does have some severe mental impairments and is limited to unskilled work. Thus, because this opinion evidence is somewhat consistent with the objective evidence as a whole it is given great weight to the extent the claimant is limited to light work.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. Although the claimant has received treatment for the allegedly disabling impairments, the treatment has been essentially routine and/or conservative in nature. In fact, there is no indication in the record that the claimant has undergone an EEG, which is the main diagnostic test for seizure activity.

The claimant commented that he could not afford health care; however, he does spend money for drinking alcohol, which his primary care provider suggested was the cause for his seizure activity. The undersigned takes note that the claimant does have a severe back problem, which is evident by radiology reports; however, the claimant has described daily activities which are not limited to the extent one would expect for a disabled person. Additionally, the claimant's treatment notes [were] for routine follow-up exams, not complaints of back pain. Furthermore, the claimant does not take any prescription medications for his alleged back pain and he has never sought or received treatment from a specialist; all treatment has been rendered by his primary care provider.

Finally, the undersigned finds that the residual functional capacity determined is consistent with some of the claimant's own subjective allegations, but that the balance of the allegations are not consistent with the relatively mild to moderate severity reflected in the objective medical findings both prior to and after the alleged onset date, and as evidenced by the conservative degree of treatment the claimant has received. The record does not exhibit the types of medical treatment one would expect for a totally disabled individual. The claimant is partially credible. (Tr. at 17).

The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence in determining whether a claimant is disabled under the Act. *Johnson v. Barnhart*, 434 F.3d 650, n. 5 (4th Cir. 2005). The ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by medically acceptable evidence and consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2) and 416.927. If a medical opinion is not supported by relevant evidence or it is

inconsistent with the record as a whole, it will be accorded significantly less weight. *See* 20 C.F.R. §§ 404.1527 (c)(3), (4) and 416.927; *Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Moreover, a treating physician's opinion can never bind the ALJ on issues reserved to the ALJ, such as a claimant's RFC or whether a claimant is able to work. These decisions are solely the responsibility of the ALJ because they are administrative findings that are dispositive of a case; they are not medical issues. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927; Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 (S.S.A.). In the present matter, the ALJ found Dr. Glaser's opinion to be contrary to and not supported by the other evidence of record (Tr. at 16).

The ALJ stated "the State agency consultants evaluated the objective medical record and the claimant's allegations and determined that he is capable of performing a range of light exertional work with occasional postural limitations" (Tr. at 17). Claimant engages in social activities (Tr. at 220). He drives and goes shopping. (Id.) His hobbies and interests includes reading, watching television and playing the guitar (Tr. at 144). On his Function Report for the Social Security Administration, Claimant reported to experience no problems getting along with family, friends, neighbors or others (Tr. at 145). He reported his ability to follow written and spoken instructions as fair (Tr. at 145). In regards to social activities, Claimant reported that he spends time with others, walking and watching sports approximately twice a week (Tr. at 173). He specifically reported to attending church once a week and going to a friend's house twice a week (Tr. at 173). Claimant reported on December 7, 2010, that he does not get along with

authority figures and cannot handle changes in routine (Tr. at 175). Claimant has experience being a lead worker and supervising people at work (Tr. at 126).

Claimant testified that he gets depressed when he thinks about his little brother and his father passing away, as well as friends recently passing away. He testified that "it's not all the time" (Tr. at 32). When asked if he thought the depression affects the way he deals with other people. He responded that "I would say it would have some effect" (Tr. at 32). Claimant testified to being a member of the Alderson Volunteer Fire Department and EMS (Tr. at 33). He testified to being a fireman currently and for 35 years (Tr. at 34-35). Claimant testified to feeling nervous if he has to speak in front of a lot of people (Tr. at 34).

The ALJ considered the medical source opinions by State Agency medical consultants in determining the severity of Claimant's impairments. The ALJ held that "the undersigned finds that the evidence submitted at the hearing level shows the claimant does have some severe mental impairments and is limited to unskilled work. Thus, because the opinion evidence is somewhat consistent with the objective evidence as a whole it is given great weight to the extent the claimant is limited to light work" (Tr. at 17).

<u>Vocational Expert</u>

<u>SSR 00-4p Use of vocational expert and vocation specialist evidence, and other reliable occupational information in disability decisions.</u>

SSR 00-4p states that "Occupational evidence provided by a VE or VS[7] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a

---

[7] VS stands for Vocational Specialist.

reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.  Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information."  The Ruling continues to require the following:  "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified."

SSR 00-4p lays the responsibility to ask about apparent conflicts upon the shoulders of the adjudicator.  The DOT lists the responsibilities of a bottle packer (DOT code 920.685.026) to "Tend machine that inserts filled beer bottles into cardboard cartons: Positions empty carton on platform below automatic packer.  Press pedal to raise platform to packer level and to deposit bottles in carton.  Releases pedal and pushes full carton onto conveyor.  Straightens or resets partitions in carton."  The DOT lists the responsibilities of a cleaner (DOT code 323.687.014) to include "Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any  combination of following duties: Sorts, counts, folds, marks, or carries linens.  Makes beds.  Replenishes supplies, such as drinking glasses and writing supplies.  Checks wraps and renders personal assistance to patrons.  Moves furniture,

hangs drapes, and rolls carpets.   Performs other duties as described under CLEANER (any industry) I Master Title.   May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989).   "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." *Id.* at 51.   Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.   *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).   Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe.   *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983).

In the present case, the vocational expert testified that the Claimant did not have any past relevant work, and the ALJ agreed.   The ALJ then asked the vocational expert to consider an individual of the same age, education and work history as the Claimant who could perform work at the light exertion level but was limited to occasional postural activities except he could never climb ladders, ropes or scaffolds but could frequently stoop (Tr. at 36).   The individual should avoid concentrated exposure to extreme cold and vibration and even moderate exposure to hazards.   (*Id.*).   This individual also should receive no more than simple job instructions.   (*Id.*).   The vocational expert stated the hypothetical individual could perform work as a cashier (DOT

No. 211.462-010), a packer (DOT No. 920, 685-026) or a cleaner (DOT No. 323.687-014) (Tr. at 37).

For the second hypothetical, the ALJ asked the vocational expert to add to the first hypothetical that the individual could sit for a total of four hours and could stand and/or walk a total of two hours during the work day.  The vocational expert relied that the named jobs would not remain.  Lastly, the ALJ asked the vocational expert to consider the limitations from the first hypothetical with the additional limitation that the individual would not be able to deal with the ordinary stresses involved in a typical workday.  The vocational expert stated this limitation would eliminate all competitive employment.

Claimant asserts that the ALJ presented an incomplete hypothetical to the VE because Claimant believes additional limitations pertaining to his alleged inability to deal with the ordinary stresses involved in a typical workday should have been included in the ALJ's RFC. While Claimant disagrees with the ALJ's findings related to Claimant's social functioning, the Court cannot recommend that they lack the support of substantial evidence.  The ALJ did present a hypothetical including the additional limitations Claimant proposes, however, the ALJ ultimately reviews the case, makes the findings of fact and resolves conflicts of evidence.  In his decision, the ALJ explained that "Other hypothetical questions and alleged limitations posed to the vocational expert are rejected since the substantial evidence does not support them in this case" (Tr. at 18).  The ALJ complied with this duty.

<u>Conclusion</u>

The jobs provided by the VE do not contain social responsibilities.  Therefore, the jobs provided by the VE do not conflict with the ALJ's RFC determination that stated Claimant's maximum capacity to function socially was moderate, at best.

The evidence supports the Commissioner's final decision that Claimant can perform work that exists in the economy.  The ALJ correctly found that despite his severe impairments, Claimant retained the ability to perform a limited range of light exertional work.  Moreover, with that residual functional capacity, Claimant could perform work that exists in the economy.  The ALJ's decision, finding Claimant not disabled within the meaning of the Social Security Act, is substantially supported by the evidence and should be affirmed.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Irene C. Berger.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   February 4, 2015

Dwane L. Tinsley
United States Magistrate Judge